**SCURA, WIGFIELD, HEYER,**
**STEVENS & CAMMAROTA, LLP.**
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Tel.: 973-696-8391
David L. Stevens, Esq.
Email: dstevens@scura.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re:* | Case No. 24-16570-VFP |
| **GEORGE MORALES, JR.,** | Chapter 13 |
| Debtor. | Judge: Hon. Vincent F. Papalia |
| | Hearing Date: October 17, 2024, 10:00am |

**MOTION FOR AN ORDER AUTHORIZING AND APPROVING: (I) THE SALE OF REAL PROPERTY; (II) PAYMENT OF PROFESSIONAL FEES FROM SALE PROCEEDS; (III) WAIVING THE FOURTEEN-DAY STAY PURSUANT TO FED. R. BANKR. P. 6004(h); AND (IV) GRANTING OTHER AND RELATED RELIEF**

George Morales, Jr. (the "Debtor"), by and through his counsel, Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, respectfully represents:

### I.    INTRODUCTION

This motion is submitted for an order, pursuant to 11 U.S.C. §§ 105 and 363(b) and (m), and Fed. R. Bankr. P. 2002, 6004, and D.N.J. L.B.R. 6004-1 and 9013-4: (a) authorizing the sale of real property; and (b) authorizing compensation to retained professionals for approved fees and costs from sale proceeds; and (c) waiving the fourteen-day stay; and (d) granting other and related relief (the "Motion"). In support of this Motion, the Debtor filed a certification of the Debtor and a certification of the Realtor simultaneously herewith, which sets forth the facts relied upon and are incorporated herein by reference. The Debtor respectfully states as follows:

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409.

## III. BACKGROUND

On June 28, 2024 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. (Dkt. No. 1). The Debtor and his non-Debtor spouse are the owners of the residential real property located at 34 Boonstra Drive, Wayne, NJ 07470, at Block 1103, Lot 12 (the "Property"). The Property is a single-family home. At the time of the Petition Date, the Property had a scheduled value of $800,000. A Certified Market Analysis is attached to the Certification of the Debtor as **Exhibit A**. The Property is encumbered by a mortgage lien held by Lakeview Loan Servicing, LLC whose agent is Flagstar Bank, N.A., ("Flagstar") (Proof of Claim No. 21 in Claims Registry) asserting a payoff amount of $524,897.81.

The Debtor's proposed plan contemplates paying creditors from the proceeds of the sale of the Property. (Dkt. 3). On August 19, 2024, the Court granted the Debtor's Order to Giovanna Meli as Real Estate Agent. (Dkt. No. 23).

The Property has been on the market for two months. The Property was registered on the central Multiple Listing Service ("MLS"), MLS#24025731, and advertised on 5 websites for real estate sales. The Property had two open houses and over a dozen tours that resulted in five offers total. The Property was initially under contract on August 16, 2024, and listed as under contract on MLS on September 12, 2024.

The Debtor and his non-debtor spouse have entered a Contract for Sale to sell the Property

to Lyndia Louissaint-Broady (the "Purchaser"), for the purchase price of $890,000.00 (the Contract for Sale along with the Riders, together hereinafter constitute the "Purchase Agreement"), which was the highest offer the Debtor received.

There are no other agreements between the Debtor and Purchaser other than what was agreed to in the Purchase Agreement. The Purchase Agreement is annexed to the Certification of the Debtor as **Exhibit B**.

### IV. LIENS ON THE PROPERTY

Liens that may encumber the Property include:

a. Any and all unpaid property taxes;

b. Any and all unpaid municipal charges for water and/or sewer;

c. The Flagstar mortgage lien in filed at $524,897.81;

d. The United States Department of Housing and Urban Development mortgage lien filed in the amount of $19,723.07;

e. The Internal Revenue Service filed proof of claim number 6 asserting that $25,621.05 of its claim is secured against the Property; and

f. The State of New Jersey Division of Taxation Bankruptcy Section filed proof of claim number 23 asserting that $55,179.47 of its claim is secured against the Property

### V. EQUITY ANALYSIS

The expected equity received from the sale of the Property is as follows:

| Property | Purchase Price | (-) Liens | (-) Realtor Fee & Real Estate Attorney | (-) Spousal Equity | (-) Exemptions | Estimated Equity |
|---|---|---|---|---|---|---|
| | | | | | | |

| 34 Boonstra Drive, Wayne, NJ 07052 | $890,000.00 | (J) First Mortgage $524,897.81 (J) Second Mortgage $19,723.07 (D) IRS Tax Liens $26,621.05 (D) NJ Tax Liens $55,179.47 Total (J) $542,897.81 (D+J) $626,421.40 | (Realtor 4.5% Commission) $40,050.00 Real Estate Attorney Fees $1,950.00 Total $42,000 | Spousal Equity $151,689.56 | $27,900.00 | $41,989.04 [(890,000) - (626,421.40) - (42,000.00) – ($151,689.56) - ($27,900) = est. $41,989.04] |

## VI. TERMS OF THE SALE AGREEMENT

The pertinent terms of the Purchase Agreement are as follows:

a. **Purchase Price**. $890,000.00
   i. Initial Deposit: $80,000
   ii. Additional Deposit: $0.00
   iii. Mortgage: $480,000.00
   iv. Balance of Purchase Price: $330,000.00

b. **Purchasers**. Lyndia Louissaint-Broady.

c. **Anticipated Closing**. The Contract of Sale calls for a closing date on or about October 14, 2024.

d. **Quality and Insurability of Title**. At the Closing, Seller shall deliver a duly executed Bargain and Sale Deed with Covenant as to Grantor's Acts or other Deed satisfactory to the Purchaser. Title to the Property will be free from all claims or rights of others, except as described in the Purchase Agreement. The Deed shall contain the full legal description of the Property.

This sale will be subject to utility and other easements and restrictions of record, if any, and such state of facts as an accurate survey might disclose, provided such easement or restriction does not unreasonably limit the use of the Property.

Purchaser does not have to complete the purchase, however, if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property. Buyer does not have to complete the purchase,

4

however, if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property for residential purposes. A violation of any restriction shall not be a reason for Purchaser refusing to complete the Closing as long as the title company insures Purchaser against loss at regular rates. The sale will also be made subject to applicable zoning ordinances, provided that the ordinances do not render the title unmarketable.

Title to the Property shall be good, marketable and insurable, at regular rates, subject only to the claims and rights described in the Purchase Agreement. Purchaser agrees to order a title insurance commitment (title search) and survey, if required by Purchaser's lender, title company or the municipality where the Property is located, and to furnish copies to the Seller. If Seller's title contains any exceptions other than as set forth, Purchaser shall notify Seller and Seller shall have thirty (30) calendar days within which to eliminate those exceptions. Seller represents, to the best of Seller's knowledge, that there are no restriction in any conveyance or plans of record that will prohibit use and/or occupancy of the Property as a single family residential dwelling. Seller represents that all buildings and other improvements on the Property are within its boundary lines and that no improvements on adjoining properties extend across boundary lines of the Property.

If Seller is unable to transfer the quality of title require and Purchaser and Seller are unable to agree upon a reduction of the purchase price, Purchaser shall have the option to either void the Purchase Agreement, in which case the monies paid by Purchaser toward the purchase price shall be returned to Purchaser, together with the actual costs of the title search and the survey fees in preparing for the Closing without further liability to Seller, or to proceed with the Closing without any reduction of the purchase price.

e. **Inspection**. The Seller(s) will permit access for all inspections provided for in this contract. They Purchaser shall be entitled to a walk though inspection at the time of the closing of title to examine the interior and exterior of the property and to ensure that there has been no material change in the condition of the property since the opening of escrow and to ensure that the plumbing, electric and heating are in the same working order at the closing as they were during the Purchaser's home inspections, wear and tear excepted.

f. **Certificate of Occupancy and Zoning Compliance**.

Seller represents that the home is a legal "one family" and shall deliver the necessary certificate of continuing occupancy at closing. Additionally, if Seller(s) fail to correct any violations of law at the Sellers' own expense, Purchaser may cancel the contract and receive a total refund of the deposit monies plus reimbursement of search, survey expenses and attorneys fees. Seller's monetary obligations in obtaiing any municipal certificats shall be capped at $750.00. If the cost to obtain a municipal certificate exceeds the $750.00 cap, then the parties may negotiate a reasonable resolution, but if they

5

are unsuccessful, then either party may terminate the contract.

Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for this Property, Seller shall obtain it at Seller's expense and provide to Purchaser prior to Closing and shall be responsible to make and pay for any repairs required in order to obtain the Certificate or Letter. In addition, Seller shall comply with all New Jersey laws, and local ordinances, including but not limited to smoke detectors, carbon monoxide detectors, fire extinguishers and indoor sprinklers, the cost of which shall be paid by Seller and not considered as a repair cost.

g.  **Possession and Occupancy**. Possession and occupancy will be given to Purchaser at the Closing. Purchaser is entitled to possession of Property immediately upon delivery of the Deed and the Closing. Sellers shall pay off any person with a claim or right affecting the Property from the proceeds of this sale at or before the Closing.

h.  **Failure to Close**. In the event the Seller(s) fail to close in accordance with this contract, the Purchaser may commence any legal or equitable action to which the Purchaser is entitled. In the event Purchaser fails to close in accordance with this contract, the Seller(s) may commence any legal or equitable action to which the Seller(s) is entitled.

i.  **Risk of Loss**. If there is damage, the Purchaser can proceed with the closing and either: The risk of loss or damage to the Property by fire or otherwise, except for ordinary wear and tear, is the responsibility of the Sellers until the Closing. In the event damage occurs to the Property, the cost of which to repair exceeds 10% of the purchase price, either party may cancel the Contract.

j.  **Contingency of Purchase.** The Contract is contingent upon the Purchaser receiving an unconditional written commitment within thirty (30) days of the expiration of attorney review (the "Commitment Date") for financing in the amount of $500,000.00 from an institutional mortgage lender or mortgage broker of Purchaser's. This provision shall apply whether the Purchaser applies for a fixed rate or adjustable-rate mortgage.

If the Purchaser has made a good faith effort to obtain financing but is unable to provide a mortgage commitment from an institutional lender or broker of Buyer's choosing by the Commitment Date, the Seller shall grant Buyer a reasonable extension if requested by the Purchaser. The failure of Buyer to provide a written commitment prior to the expiration of the Commitment Date shall not be deemed a waiver of this contingency.

> In the event that Purchaser is (i) unable to obtain mortgage commitment by the Commitment Date, (ii)a commitment is not issued by the Commitment Date or (iii) a commitment is issued with conditions that are beyond the reasonable control of Purchaser to satisfy, Purchaser or Seller shall have the right to cenecl this Contract and receive the return of all deposit monies paid and shall have no further obligation to the Seller. However, cancelation of the Contract by the Seller pursuant to this provision must be on three (3) business days' notice, during which time if the Purchaser waives this contingency, such cancellation shall not be effective, the Contract shall not be deemed cancelled, and this mortgage contingency shall be deemed satisfied. The Purchaser may only terminate pursuant to this provision by providing the Seller with a letter of credit denial from their lender. The Purchaser waiver their appraisal contingency and a low appraisal shall not afford the Purchaser the right to terminate this Contract pursuant to their mortgage contingency or otherwise.
>
> In the event a mortgage commitment is issued and Purchaser's lender fails to fund the loan, or the commitment is retracted due to no fault of the Purchaser, Purchaser shall be entitled to cancel this Contract and all deposit monies paid under this Contract shall be refunded to Purchaser within three (3) business days with no further obligation from either party to the other.
> .

k. **The Sale Contract is Contingent upon the Sale of Real Property by Purchaser**.

> This transaction is contingent upon the successful sale and closing of the property located at 896 Willoughby Avenue, Brooklyn, NY. The sale of the property is in the process of completing the sale with a cash purchaser who is ready to close.

The Debtor believes the proposed sale provides the highest and best value to the bankruptcy estate.

## VII.    REQUEST FOR RELIEF AND BASIS THEREFOR

### A.    The Debtor Should be Authorized to Sell the Property in Accordance with Sections 105(a), 363(b)(1), 363(m), and 541 of the Bankruptcy Code.

The Debtor's interest in the Property constitutes property of the bankruptcy estate pursuant to Bankruptcy Code Section 541. 11 U.S.C. § 541. The Debtor has the authority to sell the Property pursuant to Bankruptcy Code Section 1303. Accordingly, the Debtor may sell the property of the estate pursuant to Bankruptcy Code Sections 363(b)(1), 363(m) and section 1322(b)(8). *See also*,

7

Fed. R. Bankr. P. 6004(f)(1) (authorizing sales outside of the ordinary course of business to be conducted privately or by public auction). Additionally, Bankruptcy Code Section 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

### i. The Purchaser is a Good Faith Purchaser per 11 U.S.C. § 363(m).

Although the Bankruptcy Code does not provide guidance regarding circumstances under which a sale of assets may be approved, the United States Court of Appeals for the Third Circuit in the seminal case of *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986), interpreted Section 363(b) to require a finding by the Bankruptcy Court that the purchaser of a debtor's assets is a good faith Purchaser. The Third Circuit construed the "good faith Purchaser" standard to mean one who purchases in "good faith" and for "value." *Abbotts Dairies*, 788 F.2d at 147. Moreover,

> Neither the Bankruptcy Code nor the Bankruptcy Rules define 'good faith.' In construing this phrase, courts have therefore borrowed from traditional equitable principles, holding the concept of 'good faith' speaks to the integrity of a party's conduct in the course of the bankruptcy sale proceedings. A purchaser's good faith status at a bankruptcy sale would be destroyed by misconduct involving 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'

(citations omitted) *In re Tempo Technology Corp.*, 202 B.R. 363, 367 (Bankr. Del. 1996).

The *Abbotts Dairies* Court then compared a Section 363(b) purchaser to a Purchaser at a judicial sale:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

8

*Abbotts Dairies*, 788 F.2d at 147 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Finally, the Court noted that "courts have held that '[f]air and valuable consideration is given in a bankruptcy sale when the purchaser pays 75% of the appraised value of the assets'." *Abbotts Dairies*, 788 F.2d at 149 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1197; *In re Karpe*, 84 B.R. 926, 933 (Bankr. M.D. Pa. 1988).

Here, the proposed sale of the Property satisfies the "good faith" prong of the *Abbotts Dairies* test. First, the proposed purchase price of $890,000.00 for the Property is fair and was negotiated in good faith thereby satisfying the *Abbots Dairies* test. *See*, Certified Market Analysis attached to the Certification of the Debtor as Exhibit A. Second, the Debtor has fully disclosed and requested the Court's approval of the terms and conditions of the proposed sale and provided notice of the sale to the Court for authorization. *See In re Colony Hill Assoc.*, 111 F.3d 269 (2d Cir. 1997) (determination of "good faith" is based on traditional equitable principles, including whether there has been full disclosure to the Bankruptcy Court). Accordingly, notice will be provided to all parties-in-interest in the Debtor's bankruptcy case.

Third, this transaction was negotiated at arm's length and there have been no allegations that there was any misconduct by the parties related to the Purchase Agreement. The Debtor and Purchaser did not know one another prior to the sale and do not have any prior agreements.

Finally, the parties here are acting in good faith because the Motion and all facts in support of the proposed sale will be served on all interested parties and approved by the Court.

Accordingly, the successful Purchaser should be deemed a "good faith purchaser" and the Debtor submits that the sale process has been proposed in good faith pursuant to 11 U.S.C. § 363(m).

    **ii. The Sale is for a Sound Business Purpose**

The Third Circuit appears to have adopted the "sound business purpose" test when examining the reason for an asset sale first articulated in *Official Comm. Of Unsecured Creditors v. Lionel Corp.*, 722 F.2d 1063, 1067 (2d Cir. 1983); *see*, *In re Indus. Valley Ref. & Air Cond. Supplies, Inc.*, 77 B.R. 15, 20 (Bankr. E.D. Pa. 1987). "In determining whether to authorize use, sale or lease of property of the estate under [Section 363], courts require the [Trustee] to show that a sound business purpose justifies such actions." *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015).

In *Lionel*, the Second Circuit held that:

> There must be some articulated business justification . . . for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under [s]ection 363(b) . . . The rule we adopt requires that a judge determining a [section] 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application.

*Lionel*, 722 F.2d at 1070-71.

In *Summit Glob. Logistics, Inc.*, the Third Circuit held that:

> "In accordance with *Lionel* and subsequent precedent within the Third Circuit, [d]ebtors must prove the following: (1) a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notices; and (4) the Purchaser has acted in good faith."

*In re Summit Glob. Logistics, Inc.*, 2008 WL 819934, at *9 (Bankr. D.N.J. Mar. 26, 2008).

The proposed sale of the Property meets the Third Circuit's requirement for a sale of assets out of the ordinary course of business. First, a sound business reason exists because should the creditors foreclose, there may exist a deficiency for which the Debtor may be liable. Second, carrying the costs of maintaining a home would be an unnecessary added expense and a sale of the Property will pay all secured claims encumbering the Property, which would otherwise continue to accrue unpaid interest. Further, the Debtor's share of the net sale proceeds will be used to fund the Debtor's Chapter 13 case. The Debtor will provide adequate notice to all parties entitled to receive notice of the proposed sale. Additionally, there is no evidence of bad faith regarding the

sale of the Property and therefore, the Debtor's business judgment should be taken at face value.

As demonstrated above, the Purchaser is a good faith purchaser and has negotiated the purchase price at arm's length. The purchase price of $890,000.00 is greater than estimated value range from the CMA of $780,000.00-820,000.00. As stated above, there are no agreements between the Debtor and the Purchaser other than what has been agreed to in the Purchase Agreement and the accompanying supporting documents. Thus, the Debtor respectfully submits that the Purchaser offer meets the "sound business purpose" test articulated in *Lionel*. Consideration of the above factors, in this case, weighs in favor of approval, and the purchase price the estate realizes will be fair and reasonable.

### B.  Professional Fees Should be Paid from Sale Proceeds

Giovanna Meli ("Realtor"), is a Real Estate Broker licensed in the State of New Jersey and was retained to list and market the property and take other actions as necessary to effectuate the closing of the sale of Debtor's Property. The arrangement for compensation is a 4.5% commission on the sale rendered on behalf of the Debtor and his non-Debtor spouse in the sale of the Property. But for the efforts of the Realtor, the Debtor would not have been able to consummate the sale as efficiently, and in a manner that is most beneficial to the Debtor and his creditors. Thus, the Court should allow the Realtor's fees to be paid from the sale proceeds at closing and in accordance with D.N.J. LBR 2016-1.

John D. Sherman, Esq. is a Real Estate Attorney serving the Debtor. He works for the firm Ansell Grimm & Aaron, PC, which has filed an application for retention on September 27, 2024. The compensation for his services is a fixed fee of $1,950, which will only increase if the closing does not occur within 45 days of the retention agreement dated September 25, 2024.  The closing is scheduled to occur on October 14, 2024.  The Real Estate Attorney will apply to the Bankruptcy Court for compensation of bankruptcy counsel and the real estate attorney. A reserve from the sale

11

proceeds will be held in trust by Debtor's bankruptcy counsel and released after application and approval of compensation or further order of this Court.

## VIII.  <u>WAIVER OF 14 DAY STAY</u>

Pursuant to Fed. R. Bankr. P. 6004(h), unless the Court orders otherwise, orders authorizing the sale of the assets pursuant to Section 363 of the Bankruptcy Code automatically stay for fourteen (14) days after entry of the order. The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. <u>See</u>, Advisory Committee Notes to Fed. R. Bankr. P. 6004(g) (redesignated as subsection "h" by the 2005 Bankruptcy Reform Act).

Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay, bankruptcy commentators have suggested that the period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See*, 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. rev. 2003).

The Debtor asserts that given the goal by the parties, in this case, to liquidate assets and bring this case to conclusion in the short term, there is cause to waive the stay and the Debtor requests that upon approval of the sale, the fourteen (14) day period pursuant to Rule 6004(h) be waived by the Court.

## IX. <u>NOTICE</u>

Notice of this Motion is being provided to the following parties: (i) all parties in interest (ii) secured parties; (iii) the Office of the United States Trustee for the District of New Jersey; (iv) all parties who have filed and served a *Notice of Appearance*; and (vi) all persons or entities purporting to have a lien or judgment, through his counsel, if represented, which may be an encumbrance on the Property.  The Debtor submits that no other or further notice is required.

## X. CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of order effective immediately (a) authorizing the sale of Property in accordance with the Purchase Agreement to be entered into by the Debtor and Purchasers; (b) authorizing all actions necessary to convey title to the Property as proposed; (c) authorizing payment to retained professionals at closing, and (d) waiving the fourteen-day stay pursuant to Fed. R. Bankr. P. 6004(h).

                                  **SCURA, WIGFIELD, HEYER,**
                                  **STEVENS & CAMMAROTA, LLP.**
                                  Attorneys for Debtor

Dated: October 7, 2024                  By: */s/David L. Stevens*
                                                David L. Stevens, Esq.